# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF MISSOURI
# CENTRAL DIVISION

| | |
|---|---|
| LARRY JOHNSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 2:16-cv-04129-NKL |
| | ) |
| GEORGE LOMBARDI, et al., | ) |
| | ) |
| Defendants. | ) |
| | ) |

## ORDER

Pending before the Court is Plaintiff Larry Johnson's Motion for Summary Judgment, [Doc. 174], Defendants' Earnest Jackson and Carey Markley's ("Corizon Defendants") Motion for Summary Judgment, [Doc. 177], and Defendants Mike Alexander, Danielle Avant, Louisa Bolinger, Bill Bresnahan, Sandra Jimmerson, Scott Lawrence, George Lombardi, Tim Leach, Glen Markley, Justin Murray, Cyndi Prudden, Amy Roderick, David Rothenay, Bill Schmutz, Tom Schultz, Merlin Thomas, Teri Twyman, Scott Weber, Victoria Wells, Eric Whittle, and Justin Wyatt's ("State Defendants") Motion for Summary Judgment, [Doc. 180]. For the following reasons, Defendants' motions are granted, and Plaintiff's motion is denied.

## I. Factual Background[1]

Plaintiff Larry E. Johnson is an inmate of the Missouri Department of Corrections, and at all relevant times was housed at Algoa Correctional Center in Jefferson City, Missouri. Plaintiff brings the majority of this suit under 42 U.S.C. §§ 1983 and 1988, alleging several federal

---

[1] This section includes disputed and undisputed material facts. As Defendants' motion for summary judgment is granted, where facts are disputed, the Court views the facts in the light most favorable to the Plaintiffs.

constitutional violations by correctional officers and staff. Plaintiff also brings one count under state law, alleging a violation of the Missouri Sunshine Law.

### A. Attorney-Client Communications

Counts I, II, and VII stem from Plaintiff's interactions with several defendants while trying to communicate with his attorneys. While Plaintiff was housed at Algoa Correctional Center, the Defendants consistently denied him any opportunity to speak privately with his attorneys, either on the phone or in person. Plaintiff points to several specific instances to support his claims.

Plaintiff and his attorney, Michael Horn, held attorney-client phone calls on 11/19/2015, 12/7/2015, 12/17/2015, 12/30/2015, 1/7/2016, 1/29/2016, 2/5/2016, 2/11/2016, 2/24/2016, and 3/16/2016. On each date, Defendants refused to leave the room or otherwise give Plaintiff an opportunity to speak privately with his attorney. Horn also personally visited Plaintiff on 11/6/2015, 1/15/2016, and 3/8/2016, and during each visit, Corrections officers remained in close proximity to the pair and required the doors to remain open. Without referencing any specific dates or occurrences, Plaintiff states that the same practice was followed during his phone calls with two other attorneys, Stuart Huffman and Joseph Allen. On several occasions, Plaintiff's attorneys requested that Defendants leave the room so Plaintiff could speak privately, but the Defendants refused, often citing security concerns.

At no point during any phone call or visit did Horn represent Plaintiff in a criminal matter. However, Plaintiff often sought second opinions from Horn with regard to work being done by other attorneys. The record does not show what that work pertained to.

Additionally, on one recent occasion, Plaintiff went to the mail room to retrieve his mail. When the Defendants handed it to him, he saw that an envelope containing his legal mail was

already open. Because officers are not allowed to open legal mail without the inmate present, Plaintiff confronted the two Defendants. The Defendants responded by stating, "we just watched you open it." According to Plaintiff, he could tell the documents that were enclosed had been read, but he did not take any further action except to speak with his attorney about it

### B. Dental Care

Count IV arises out of two separate medical issues. In October 2015, Plaintiff fell in the shower and cut open his lip. After waiting several days, Plaintiff received stitches for his injury. Several days later, Defendants Jackson and Markley went to Plaintiff's cell, and requested that Plaintiff sign a medical waiver. When he refused, Defendant Markley shut the "chuckhole" door, which struck Plaintiff and reinjured his lip.

Then, Plaintiff began having tooth pain as early as December 2015. He filed Medical Service Requests, which complained about the pain and requested extraction, on 12/26/2015, 1/3/2016, 1/13/2016, 1/14/2016, and 1/16/2016. After reviewing the MSRs, nurses scheduled Plaintiff for a dentist appointment. Still in pain while he awaited treatment, Plaintiff self-declared dental emergencies on 1/29/2016, 2/4/2016, 2/16/2016, and 2/21/2016. Plaintiff was initially scheduled for an appointment on 2/8/2016 with Defendant Jackson, but it was moved to 2/9/2016 because Plaintiff was not released from work/school in time. On 2/9/2016, Defendant Jackson assessed that Plaintiff needed a tooth extraction due to decay, and triaged him for the procedure. Before the procedure occurred, however, Jackson stated Plaintiff was a "troublemaker" and rescheduled the appointment. On 2/16/2016, Defendant Jackson saw Plaintiff again and finally scheduled him for a tooth extraction to occur on 2/29/2016. On 2/29/2016, Defendant Jackson performed the tooth extraction. At each appointment with Defendant Jackson and on each MSR, Plaintiff asked for his tooth to be pulled.

## II. Discussion

Summary judgment is appropriate if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986). The Court "look[s] to the substantive law to determine whether an element is essential to a case, and 'only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.'" *Wells Fargo Fin. Leasing, Inc. v. LMF Fette, Inc.*, 382 F.3d 852, 855 (8th Cir. 2004) (quoting *Anderson*, 477 U.S. at 248).

A movant is entitled to Summary Judgment when the nonmoving party has failed "to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). No genuine issue of fact exists in such a case because "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 323; *see also, Sallis v. University of Minnesota,* 408 F.3d 470, 474 (8th Cir. 2005).

Plaintiff's claim arises under § 1983, which affords a remedy for damages when a person acting under color of state law deprives another person of any federal constitutional right. *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985); *Zutz v. Nelson*, 601 F.3d 842, 848 (8th Cir. 2010). "For there to be section 1983 liability, 'there must first be a violation of the plaintiff's constitutional rights.'" *Avalos v. City of Greenwood*, 382 F.3d 792, 802 (8th Cir. 2004) (quoting *Shrum ex rel. Kelly v. Kluck*, 249 F.3d 773, 777 (8th Cir. 2001)). "[T]he statute creates no substantive rights; it merely provides remedies for deprivations of rights established elsewhere." *Id.* (citing *Baker v. McCollan*, 443 U.S. 137, 140, 144, n. 3 (1979)). Plaintiff alleges the Defendants violated his Sixth and Eighth Amendment rights by denying him a private method of

communication with his attorney, denying him counsel at a prison disciplinary hearing, retaliating against him and delaying his access to dental care, employing a constitutionally inadequate grievance system, opening his legal mail without him present, and retaliating against him for filing grievances and the instant lawsuit.[2]

### A. Counts I and II

Count I alleges both Sixth and Eighth Amendment violations for refusing to give Plaintiff privacy during his phone calls with attorneys. Defendants Lombardi, Lawrence, Roderick, Schmutz, Jimmerson, Bolinger, Weber, Thomas, Twyman, Avant, Bresnahan, Schultz, Leach, and Wells are named in Count I. Count II also alleges both Sixth and Eighth Amendment violations, but for refusing to give Plaintiff and his attorneys a space to speak privately during in-person visits. Count II is brought against Defendants Lombardi, Lawrence, Roderick, Bolinger, Rothenay, Alexander, and Jimmerson. Although the complaint brings Counts I & II under only the Sixth and Eighth Amendment, Plaintiff's briefing raises Fifth and Fourteenth Amendment Due Process issues as well.

#### 1. Sixth Amendment

Plaintiff alleges that the Defendants violated his Sixth Amendment right to counsel when they listened to his phone calls and in person meetings with his attorneys. However, "[a] violation of the attorney-client privilege implicates the Sixth Amendment right to counsel only under certain circumstances—specifically, when the government interferes with the relationship between a criminal defendant and his attorney." *Partington v. Gedan,* 961 F.2d 852, 863 (9th Cir. 1992) (citing *Greater Newburyport Clamshell Alliance v. Public Serv. Co. of New Hampshire*, 838 F.2d 13, 19 (1st Cir. 1988) ("The sixth amendment provides a shield for the attorney-client privilege only in criminal proceedings; upon the termination of those proceedings

---
[2] Plaintiff also alleges violations of the Missouri Sunshine Law, seeking pendant jurisdiction.

and initiation of a civil action putting the privilege at issue, that *constitutional* protection ends.") (emphasis in original)). "Moreover, before it amounts to a violation of the Sixth Amendment, any government interference with the privilege must substantially prejudice the criminal defendant." *Id.*

It is undisputed that Horn did not represent Plaintiff in any criminal proceeding. [Doc. 191, p. 4-5]. Nonetheless, Plaintiff argues that "he frequently discussed his family and criminal cases with Horn for second opinions," [Doc. 196, p. 2], and that the Defendants also monitored his conversations with other attorneys, including those representing him in criminal matters. [Doc. 196, p. 2]. Yet Plaintiff has failed to present any evidence as to what specific criminal matters were discussed with any attorney and how those discussions being overheard by a defendant, caused him a concrete harm. While Plaintiff makes several references to a pending criminal matter in his deposition, he fails to identify it with any specificity. For example, Plaintiff refers to it as "an appeal," but when asked specifically what stage it was in the proceeding, he stated, "I really don't know the difference in stages and so forth." [Doc. 181-4, p. 18]. He then explained that a conviction had already been entered, and the proceeding was for "resentencing." *Id.* at 19. Plaintiff's briefing flips between calling it an "appeal" and a "post-conviction relief action," at times from one sentence to the next. [See Doc. 191, p. 3]. The lack of clarity is significant because a post-conviction proceeding is civil not criminal.

Plaintiff's Sixth Amendment claim therefore fails because his evidence does not establish that any conversations overheard dealt with criminal rather than civil matters. But even if a conversation dealt with a criminal matter, Plaintiff has failed to show how the lack of confidentiality interfered with an attorney-client relationship in a specific way that caused Plaintiff a concrete injury.

## 2. Eighth Amendment

Plaintiff also alleges that the Defendants' conduct violated his Eighth Amendment rights, because several conversations with his attorneys involved discussions about his incarceration and the issues he faced. He contends that because he was discussing conditions of confinement, the Eighth Amendment requires his discussions with counsel to be private.

"[A] prison official violates the Eighth Amendment only when two requirements are met." *Farmer v. Brennan*, 5111 U.S. 825, 834 (1994). First, objectively, Plaintiff's deprivation must be "sufficiently serious." *Id.* That is to say, the Defendants' actions must have resulted in "the denial of 'the minimal civilized measure of life's necessities.'" *Id.* (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). Second, subjectively, the prison official "must have a sufficiently culpable state of mind." *Id.* Thus, "a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety." *Id.* at 837.

First, Plaintiff has failed to provide evidence as to which conversations related to his conditions of confinement. Nor has he provided any evidence of what specifically was said about the conditions of his confinement. In fact, he has not even identified which Defendants were present when relevant discussions occurred.

Additionally, Plaintiff has provided no evidence of any injury that occurred as a result of the alleged Eighth Amendment violations. Instead, Plaintiff states that "one can easily imagine a situation where a prisoner's health and safety were at risk . . . ," and that it is "chilling to full and frank communications." [Doc. 191, p. 12]. Yet he does not provide any evidence applicable to this case to support the hypothetical posed. Without the necessary evidence on the record, Plaintiff's claim of an Eighth Amendment violation cannot survive summary judgment.

Furthermore, even if Plaintiff's allegations did constitute a violation of his Eighth Amendment right, the Defendants would be entitled to qualified immunity. "A state official . . . is protected by qualified immunity from a section 1983 claim 'unless [his] alleged conduct violated clearly established federal constitutional or statutory rights of which a reasonable person in [his] position [ ] would have known." *Mo. Protection & Advocacy Servs. v. Mo. Dep't of Mental Health*, 447 F.3d 1021, 1025 (8th Cir. 2006) (quoting *Wright v. Rolette County*, 417 F.3d 879, 884 (8th Cir. 2005)). Qualified immunity protects state officials, "so long as 'their actions could reasonably have been thought consistent with the rights they are alleged to have violated.'" *Wilson v. Lawrence County*, 260 F.3d 946, 951 (8th Cir. 2001) (quoting *Anderson v. Creighton*, 483 U.S. 635, 638 (1987)).

In determining whether a legal right is clearly established, the Eighth Circuit "applies a flexible standard, requiring some, but not precise factual correspondence with precedent, and demanding that officials apply general, well-developed legal principles." *Whisman through Whisman v. Rinehart*, 119 F.3d 1303, 1309 (8th Cir.1997). In the absence of any precedence, "a court should look to all available decisional law including decisions of state courts, other circuits and district courts . . . ." *Burnham v. Ianni*, 119 F.3d 668, 677 (8th Cir. 1997) (quoting *Hayes v. Long*, 72 F.3d 70, 73 (8th Cir. 1995). However, "officials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines." *Davis v. Hall*, 375 F.3d 703, 712 (8th Cir. 2004).

Plaintiff does not cite any authority to support his Eighth Amendment legal theory and none exists that the Court is aware of. Without any law or authority holding that monitoring communications between an inmate and his attorney violates the Eighth Amendment if they

discuss conditions of confinement—much less any clearly established authority—the Defendants are entitled to qualified immunity.

### 3. Due Process

Plaintiff also argues that the Defendants violated his constitutional rights to due process. This legal theory appears for the first time in his briefing; he did not plead a Due Process claim in his complaint. Therefore, the claim is not properly raised at the summary judgment stage. The claim also fails for the reasons discussed above in the context of Plaintiff's Eighth Amendment claim. There is a complete lack of evidence as to which Defendants were involved, what the Defendants heard that violated his right to due process, or how he was injured. Instead, Plaintiff argues in the abstract, stating that "due process requires that a prisoner be allowed to discuss violations of his civil rights with an attorney hired at his expense, without being monitored by the very persons who are allegedly violating those rights." [Doc. 175, p. 9]. Plaintiff argues that in his deposition, he described "a situation where an inmate's safety and security within the institution could be at risk . . . ." [Doc. 175, p. 10 (citing Doc. 175-10, p. 54)]. However, this is only a hypothetical situation where an individual *could* be harmed. Plaintiff does not provide any evidence that he actually did suffer an injury, let alone which defendant caused it.

Additionally, as with the Eighth Amendment claim, even if the Plaintiff did provide sufficient evidence that his due process rights were violated, the Defendants are entitled to qualified immunity. *Mo. Protection & Advocacy Servs.*, 447 F.3d at 1025. Plaintiff fails to provide, and the Court is unaware of, any law or authority to give the Defendants notice that their conduct violated Plaintiff's right to due process.

### B. Count III

Count III alleges Defendants Lombardi, Lawrence, Wyatt, and Bolinger violated Plaintiff's Sixth Amendment rights by refusing to provide counsel at a disciplinary hearing. However, "[I]nmates do not 'have a right to either retained or appointed counsel in disciplinary hearings.'" *Coleman v. Turner*, 838 F.2d 1004, 1006 (8th Cir. 1988) (quoting *Baxter v. Palmigiano*, 425 U.S. 308, 315 (1976)). Plaintiff acknowledges as much, but argues that because he was requested to sign a waiver form that listed his "rights," including several that stated he had the right to an attorney, "he must be afforded those rights." [Doc. 141, p. 14]. The Court disagrees. Defendants cannot accidentally bestow Constitutional rights simply by requesting the Plaintiff to sign a standard waiver form.

Plaintiff also argues that Defendants violated his procedural and substantive due process rights by holding a "sham disciplinary hearing." [Doc. 191, p. 15]. Count III, however, only alleges a Sixth Amendment violation and therefore a procedural or substantive due process claim is not properly raised at the summary judgment stage. But even if properly raised, Plaintiff does not cite authority to support this claim. Further, Plaintiff makes the conclusory allegation that "the only reasonable interpretation for his harsh and unjustified disciplinary sentence is that State Defendants were retaliating for his grievances and for pursuing this action." [Doc. 191, p. 14]. Such conclusory statements do not constitute evidence at the summary judgment stage.

"The protections afforded by the Due Process Clause do not extend to 'every change in the conditions of confinement' that are adverse to a prisoner." *Shields v. Lambert*, No. 4:16CV1295, 2016 WL 6138648, at *3 (E.D. Mo. 2016) (quoting *Madison v. Parker*, 104 F.3d 765, 767 (5th Cir. 1997). "Only when a prisoner demonstrates "extraordinary circumstances"

showing that a punishment imposes an atypical and significant hardship may he maintain a constitutional challenge to a change in his custodial classification." *Id.* (citing *Sandin v. Conner*, 515 U.S. 472, 484–86 (1995)) (due process protections attach only to those punishments that impose an atypical and significant hardship in relation to ordinary prison life, or to those that extend the length or duration of confinement).

Plaintiff argues that the State imposed a sanction substantially more punitive than allowed for Plaintiff's offense. [Doc. 191, p. 14]. The sanction Plaintiff received was thirty days of disciplinary segregation, one year of visiting restriction, and one year of work restrictions.[3] [Doc. 192-1, p. 3]. These restrictions are not the type of "atypical and significant hardships" that give rise to protections from the Due Process clause. Instead, Plaintiff's case is similar to that of the inmate in *Shields*. In *Shields*, the inmate was placed in disciplinary segregation and subjected to recreational restrictions, yet the court found this was not sufficient to implicate the plaintiff's due process. *Shields*, 2016 WL 6138648, at *3. Likewise, in the present matter, Plaintiff's due process rights were not implicated by a disciplinary hearing that imposed disciplinary segregation and two restrictive statuses. *Cf. Wilkerson v. Stalder*, 329 F.3d 431 (5th Cir. 2003) (noting that a prisoner's due process rights may have been violated where he was kept on lockdown status for thirty years).

Plaintiff's § 1983 claims in Count III fail as a matter of law, and summary judgment is granted for all Defendants.

C.     **Count IV – Corizon Defendants**

Count IV is alleged against two Corizon defendants, Earnest Jackson and Cary Markley. Plaintiff claims the two violated the Eighth Amendment by delaying Plaintiff's dental care and

---

[3] There is nothing in the record to reflect whether this discipline is in fact "more punitive" than normally allowed for Plaintiff's offense, but that fact is not dispositive.

11

leaving him to wait in severe pain. Defendants' denial or delay of dental care is analyzed the same as a claim of denial or delay of medical care would be under the Eighth Amendment. *See e.g.*, *Hartsfield v. Colburn*, 371 F.3d 454, 457 (8th Cir. 2004) (examining delay of dental care under the deliberate indifference standard of the Eighth Amendment). In other words, it is analyzed under a deliberate indifference standard. Deliberate indifference requires "both an objective and a subjective component: 'The [Plaintiff] must demonstrate (1) that [he] suffered [from] objectively serious medical needs and (2) that the prison officials actually knew of but deliberately disregarded those needs.'" *Jolly v. Knudsen*, 205 F.3d 1094, 1096 (8th Cir. 2000) (quoting *Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997)).

Although, as Plaintiff notes, the Eighth Circuit has "consistently reversed summary judgments in favor of prison officials when they delayed three weeks or more in providing dental care for an inmate whose mouth showed obvious signs of serious infection . . . ," the present case is distinguishable for several reasons. *Fincher v. Singleton*, 2013 Lexis 42599 (8th Cir. 2013). Primarily, the severity of Plaintiff's injury is substantially less than existed in the cases cited. For example, in *Fincher*, "the record showed Plaintiff suffered from obvious signs of distress regarding his toothache—a 'pimple' on his gums that drained puss and an inability to eat certain food or sleep at night." *Id.* In *Boyd v. Knox*, when the defendant examined plaintiff's impacted and infected wisdom tooth, his mouth was so swollen he could barely open it. 47 F.3d 966, 969 (8th Cir. 1995). In the present case, when Plaintiff filed MSRs and self-declared dental emergencies, he was examined by nurses. On 1/13, the nurse determined it was "routine" and scheduled a dentist appointment for 2/2/2016. On 1/29, the nurse noted no swelling, and that it appeared to just be a cavity. On 2/4, the nurse again observed no swelling and thought it was just a cavity, although she did prescribe an antibiotic.

Additionally, Plaintiff has not provided any evidence that Defendant Jackson knew the tooth needed to be pulled until he examined Plaintiff on 2/9/2016. The difference between 2/9/2016, when Defendant Jackson first examined Plaintiff and decided to pull the tooth, and 2/29/2016 is about three weeks. Three weeks is about the shortest amount of time that the Eighth Circuit will recognize in deliberate indifference dental care cases, but it must also be coupled with knowledge that the Plaintiff is suffering. *See Fincher*, 2013 Lexis 42599 at 5; *Hartsfield*, 491 F.3d at 397. In the present case, there was no swelling or other physical indication of a serious condition. Additionally, several other medical personnel examined Plaintiff and concluded he could wait. At most, there is evidence of negligence, not deliberate indifference.

With regard to Defendant Cary Markley, Plaintiff alleges she conspired with her husband, Glenn Markley, to delay Plaintiff's dental treatment, because of an incident that occurred several months earlier between Glenn Markley and Plaintiff. Cary Markley has come forth with an affidavit stating her duties consisted of administrative work, and she had no responsibility or authority over the scheduling or rescheduling of medical appointments at Algoa. [Doc. 179-5, p. 1]. In response, Plaintiff states: "Disputed. Plaintiff believes with additional discovery, the evidence will show this statement is false." [Doc. 188, p.3]. Ignoring the fact that discovery has closed, this is an insufficient response. Plaintiff has provided no evidence to show Defendant Cary Markley had any involvement in Plaintiff's dental treatment.

Therefore, the Court grants summary judgment as to Count IV in the Corizon Defendants' favor.

### D. Count IV – State Defendants

Count IV also alleges Eighth Amendment violations against State Defendants Lombardi, Lawrence, Glenn Markley, Bolinger, Schmutz, and Jimmerson. However, the only State

Defendant actually named in Count IV of the Complaint is Glenn Markley. Plaintiff alleges Glenn Markley's wife—the Corizon Defendant, Cary Markley—failed to schedule Plaintiff for medical appointments "in retaliation for [Plaintiff's] IRR claims about physical abuse at the hands of her spouse, Defendant Glenn Markley." [Doc. 141, p. 20]. The Complaint alleges that it is reasonable then, "to assume that Glenn Markley and Cary Markley both knew and discussed [Plaintiff's] situations, resulting in a conspiracy to [delay his dental treatment]." *Id.*

State Defendants move for summary judgment based on the Complaint, arguing that Plaintiff has offered no evidence any of them were personally involved in Plaintiff's dental care claim against the Corizon Defendants. Additionally, they emphasize that Plaintiff admits the only State Defendant even named in Count IV, Glenn Markley, is not responsible for medical. [Docs. 181-1, p.114; 191, p. 7]. Therefore, they argue, the only allegation is based on an assumption that Defendants Glenn Markley and Cary Markley together engaged in a conspiracy to delay medical care, for which there is no evidence.

Plaintiff does not address this argument, or even his initial allegations of a conspiracy. Instead, he responds with a new theory. He returns to the initial incident involving Defendant Markley, which he originally alleged caused the conspiracy, only now Plaintiff argues that it independently constitutes an Eighth Amendment violation. He argues that the State Defendants have offered no "contrary evidence about the allegations that Glenn Markley recklessly or intentionally smacked a part of a jail cell door into Plaintiff's face," and offered no evidence to contradict that the others "failed to adequately promulgate, train on, and enforce rules to prevent such unconstitutional behavior." [Doc. 191, p. 15]. Plaintiff argues that "whether any Defendant acted with deliberate indifference is a question of fact . . . ." *Id.* Therefore, because his deposition

testimony and IRR and grievance documents are the only evidence on the record, Defendants failed to demonstrate incontrovertible facts. *Id.* The Court disagrees.

Plaintiff's evidence does not support an Eighth Amendment deliberate indifference claim arising solely out of the incident with Defendant Markley. As previously stated, an Eighth Amendment deliberate indifference claim involves both an objective and subjective element. Plaintiff must demonstrate "(1) that he suffered from objectively serious medical needs and (2) that the prison officials actually knew of but deliberately disregarded those needs.'" *Knudsen*, 205 F.3d at 1096 (quoting *Dulany*, 132 F.3d at 1239) (quotation marks omitted). Plaintiff does not specify which portion or statement from his deposition supports his new theory of liability, but the Court reviewed it in its entirety. Regarding the incident with Defendant Markley, Plaintiff testified that he slipped in the shower and hit his mouth on a broken soap dish, which required stitches. [Doc. 181-1, p. 115-16]. After receiving medical care, Defendant Markley came to his cell with Defendant Jackson and tried to have Plaintiff sign a waiver. [Doc. 181-1, p. 119]. When Plaintiff refused, Defendant Markley slammed the "chuckhole" door shut, hitting Plaintiff in the mouth and causing a stitch to break. *Id.* Plaintiff states in his deposition that he believed it was intentional, based on Defendant Markley's attitude. However, he fails to explain how it constitutes deliberate indifference to a serious medical issue. There is no evidence to show that as a result of Defendant Markley's conduct Plaintiff suffered either an objectively serious medical need or that Defendant Markley subjectively knew of and deliberately disregarded it.

In reviewing the entire evidence provided by Plaintiff, the Court finds nothing to support the allegations that Defendants Lombardi, Lawrence, Bolinger, Schmutz, or Jimmerson were in any way personally involved in either the chuckhole incident, or the deliberate indifference dental claim. Therefore, each is entitled to summary judgment. *See Celotex Corp. v. Catrett*, 477

U.S. 317, 324-25 (1986) (finding that where a motion for summary judgment is based on an absence of evidence, it must be granted if the non-moving party fails to make an evidentiary showing sufficient to establish a genuine issue of fact for trial). With regard to Defendant Markley, despite deposition testimony supporting a claim that he slammed a chuckhole door on Plaintiff's mouth, even if accepted as true, Defendant Markley is entitled to summary judgment because that action alone does not satisfy either element of a deliberate indifference claim.

### E. Count V (Inadequate Grievance System)

Count V of the Fourth Amended Complaint alleges the Defendants violated Plaintiff's Eighth Amendment rights by implementing and overseeing an inadequate inmate grievance procedure. Once again, Plaintiff argues against summary judgment under a separate legal theory than alleged in the complaint. In his Suggestion in Opposition to State Defendants' Motion for Summary Judgment, Plaintiff now argues the grievance procedure violates his right to procedural due process under the Fifth and Fourteenth Amendment. Such a claim is not properly raised at the summary judgment stage.

In addition, the Eighth Circuit has held that "there is no federal constitutional liberty interest in having state officers follow state law or prison officials follow prison regulations." *Phillips v. Norris*, 320 F.3d 844, 847 (8th Cir. 2003) (citing *Kennedy v. Blankenship*, 100 F.3d 640, 643 (8th Cir. 1996). Additionally, "[a prison's] grievance procedure is a procedural right only, it does not confer any substantive right upon the inmates. Hence, it does not give rise to a protected liberty interest requiring the protections envisioned by the fourteenth amendment." *Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir. 1995) (quoting *Azeez v. DeRobertsis*, 568 F.Supp. 8, 10 (N.D.Ill.1982); *see also Shields v. Lambert*, 2016 WL 6138648, at *3. Because Plaintiff has no constitutional liberty interest in the procedure by which prison officials investigate and

subsequently rule on inmate grievances, there can be no due process violation even if Defendants fail to follow procedure. Thus, Plaintiff's claim fails as a matter of law, and summary judgment is granted in favor of all Defendants on Count V.

### F. Count VII

Count VII alleges violations of Plaintiff's Sixth and Eighth Amendment rights. Seven defendants are named in the fourth amended complaint; however, the Court already dismissed five—Lombardi, Lawrence, Bolinger, Schmutz, and Jimmerson because there is no evidence of personal involvement. The two remaining defendants are Whittle and Murray.

"Mail from an attorney to an inmate client cannot be opened for inspection outside the inmate's presence." *Cody v. Weber*, 256 F.3d 764, 768 (8th Cir. 2001). However, an "isolated incident, without any evidence of improper motive or resulting interference with the inmate's right to counsel or to access the courts, does not give rise to a constitutional violation." *Gardner v. Howard*, 109 F.3d 427, 430 (8th Cir. 1997). "Absent an articulation of how the alleged wrongful conduct actually blocked the plaintiff's access to filing a complaint, or caused a filed complaint to be deficient, the plaintiff's alleged injuries are merely speculative."

Here, Plaintiff has not alleged any specific injury that resulted from the Defendants opening his legal mail.

Therefore, the Defendants are granted summary judgment on Count VII of the complaint.

### G. Missouri Sunshine Law Claim

Because the Court grants summary judgment in favor of Defendants on all counts that invoke federal question jurisdiction, the Court declines to exercise supplemental jurisdiction over the lone remaining state law claim, Count VI. *See Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988) ("[I]n the usual case in which all federal-law claims are eliminated before

trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims.").

### III. Conclusion

For the reasons set forth above, Defendants' Motions for Summary Judgment, [Docs. 177 and 180], are granted and Plaintiff's Motion for Summary Judgment, [Doc. 174], is denied.

/s/ Nanette K. Laughrey
NANETTE K. LAUGHREY
United States District Judge

Dated: November 1, 2017
Jefferson City, Missouri